# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

KEVIN WILSON                                    CIVIL ACTION NO. 05-0223

VS.                                            SECTION P

BURL CAIN, WARDEN                              JUDGE DOHERTY

                                               MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the court is the petition for writ of *habeas corpus* filed on January 28, 2005 by *pro se* petitioner Kevin Wilson pursuant to 28 U.S.C. § 2254. Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. Petitioner is incarcerated at the Louisiana State Penitentiary where he is serving two consecutive life sentences imposed following his 1998 convictions for first and second degree murder, entered in the Sixteenth Judicial District Court, for St. Martin Parish, Louisiana.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

On January 31, 1998, petitioner was convicted of the first degree murder of Broderick O. Perry and the second degree murder of James H. Williams following trial by jury in the Sixteenth Judicial District Court. The jury was unable to reach a verdict in the sentencing phase of the first degree murder trial, accordingly, on March 23, 1998,

petitioner was sentenced to serve consecutive life sentences on the first degree and second degree murder convictions.

The murders occurred on October 5, 1996 after the victims were shot in the head during a drug transaction between Wilson and his accomplices Dwayne and Harry Calais, and the victims, Broderick O. Perry and James H. Williams, when the perpetrators attempted to steal the drugs that were to have been brought by the victims. After finding no drugs, Wilson and his accomplices burned the victims' car. Wilson subsequently gave a video-taped confession to police admitting that he was involved in arranging a drug transaction with the victims, and further admitting that he shot Perry, but that Harry Calais shot Williams. At trial, however, Wilson testified that Harry Calais killed both victims. Della Jean Batiste testified that a few days before the murder she saw Wilson with a gun. Two witnesses, Gary Johnson and Yolanda Roy, testified that after the murders, Wilson admitted that he had killed the victims. Another witness, Reginald Guidry, testified that a few days before the murders, he overheard Wilson and his accomplices plotting to rob and kill people for their drugs.

Petitioner appealed his convictions to the Third Circuit Court of Appeals. Court appointed appellate counsel argued a single assignment of error, that "the trial court erred in denying the defendant's motion for mistrial made during the state's cross examination of the defendant." This claim was presented entirely on state law grounds. Petitioner submitted a *pro se* brief and argued five additional *pro se* assignments of error

paraphrased as follows: (1) improper sequestration of jurors in violation of La.C.Cr.P. arts. 788 and 791; (2) insufficiency of the evidence; (3) discrimination in the selection of the grand jury foreman in St. Martin Parish; (4) selection process of grand jury foremen in Louisiana set forth in former L.C.Cr.P. article 413 is unconstitutional; and (5) ineffective assistance of counsel because counsel (a) failed to file a motion to quash his indictment based on discrimination in the selection of grand jury foremen, (b) failed to challenge the allegedly unconstitutional grand jury foremen selection process. Petitioner also asserted that his counsel was ineffective because he failed to object to illegal jury charges, however, petitioner provided no argument with respect to this allegation.

On October 13, 1999 petitioner's convictions were affirmed by the Third Circuit Court of Appeal in an unpublished opinion. *State v. Kevin Wilson*, 1998-01140 (La. App. 3d Cir. 10/13/99), 752 So.2d 990. The appellate court denied petitioner's mistrial claim on the merits, and refused to consider petitioner's grand jury claims because petitioner had failed to preserve the issues by filing a pre-trial motion to quash. The court also refused to consider petitioner's ineffective assistance claims. Rather, petitioner was advised to raise these claims in post-conviction proceedings. Petitioner's application for rehearing was denied on April 26, 2000.

Petitioner filed an Application for Writ of *Certiorari* in the Louisiana Supreme Court in which he listed six Assignments of Error.[1] However, he briefed only three of the

---

[1] The application was post marked on May 23, 2000 and filed in the Louisiana Supreme Court on June 13, 2000.

six assignments, to wit, (1) erroneous denial of petitioner's motion for mistrial, (2) improper sequestration of the jury, and (3) insufficiency of the evidence. In his "discussion" of "Assignment of Error 4" petitioner stated that he adopted "Assignments of Error Number Three, Four and Five in Applicant's Pro Se Brief ..." and struck "any reference to the *Campbell v. Louisiana*, proposition as being controlling law in his situation ...." On June 22, 2001, the Louisiana Supreme Court denied writs without comment. *State v. Kevin Wilson*, 2000-1707 (La. 6/22/2001), 794 So.2d 779.

On June 6, 2002 petitioner filed an Application for Post-Conviction Relief in the Sixteenth Judicial District Court. He argued eleven claims for relief paraphrased as follows: (1) ineffective assistance of counsel because counsel (a) failed to provide meaningful advocacy when he conceded petitioner's guilt in closing argument of the guilt phase of petitioner's trial, (b) failed to appear at a hearing for production of juvenile records, (c) counsel failed to object to inadmissible hearsay testimony; (d) counsel failed to develop a "meaningful relationship" with petitioner and was thus unable to learn information critical to the defense, and (e) failed to procure an expert to transcribe a taped telephone conversation; (2) prosecutorial misconduct by withholding exculpatory evidence; (3) trial court failed to grant a mistrial after prosecutor testified to prejudicial facts not in evidence; (4) trial court erroneously admitted other crimes evidence; (5) trial court excluded evidence of dangerous character of the victims; (6) trial court improperly sequestered jurors; (7) insufficiency of the evidence; (8) discrimination in connection

with the grand jury foremen selection process in St. Martin Parish; (9) unconstitutional former grand jury foreman selection process; (10) court erred when it refused to order the state to provide victim/witness's arrest and rap sheets to the petitioner; and (11) petitioner's Sixth Amendment rights were violated when the government or its agents elicited incriminating information from petitioner. Petitioner's third claim for relief regarding the trial court's failure to grant a mistrial is presented entirely on state law grounds.

On August 20, 2002, the trial court authored reasons for judgment denying and dismissing petitioner's application for post-conviction relief. The court denied petitioner's claim of erroneous denial of a mistrial on procedural grounds, namely, petitioner's failure to preserve the error by making a timely objection to the court's ruling, and because this claim was previously litigated on direct appeal. The court also rejected petitioner's substantive Grand Jury claims because petitioner's counsel failed to file a motion to quash and because these claims were previously litigated on direct appeal. Petitioner's ineffective assistance claim for failure to have an expert transcribe a taped telephone conversation, prosecutorial misconduct and other crimes evidence claims were denied on the merits.

On September 4, 2002 petitioner sought writs in the Third Circuit Court of Appeals. Petitioner's request for writs was denied by the Third Circuit on September 3,

2003. *State v. Kevin Wilson*, KH-02-01137 (La. App. 3d Cir. 9/3/2003).[2]  In denying

writs, the Third Circuit found that the majority of petitioner's claims were repetitive,

having been previously raised and reviewed on direct appeal, and that petitioner had

failed to demonstrate that he was entitled to relief on his remaining claims.

On October 23, 2003 petitioner sought review in the Louisiana Supreme Court.

The Louisiana Supreme Court denied writs on November 19, 2004 without comment.

*State ex rel Kevin Wilson v. State*, 2003-3053 (La. 11/19/2004), 888 So.2d 188.

Petitioner's *habeas* petition was signed on January 25, 2005, postmarked January

26, 2005, and received and filed in this court on January 28, 2005. [rec. doc. 1].  In his

standardized petition, Wilson asserts four grounds for relief:

> (1) "Petitioner was denied effective assistance of counsel"
> (2) "Prosecutorial misconduct"
> (3) "The court erred in allowing the prosecutor to testify to
> extremely prejudicial facts not in evidence and abused its
> discretion in failing to grant a mistrial" and
> (4) "The trial court erred in admitting other crimes evidence"

As factual support for each of these claims, petitioner directed the court to "see

memorandum attached." However, in his Memorandum in Support of Petition for Writ of

Habeas Corpus, petitioner argued only his first claim for relief, that his counsel was

ineffective, for the following reasons: (a) because counsel failed to file a motion to quash

his indictment based on discrimination in the selection of grand jury foremen, (b) because

---

[2] Because notice of the writ denial was not provided, the Third Circuit re-issued its writ denial on
November 3, 2003.

counsel failed to challenge the allegedly unconstitutional grand jury foremen selection process, and (c) because counsel failed to obtain an expert to transcribe a tape recorded telephone conversation. Because petitioner provided no factual support or argument for his second, third or fourth claims for relief which would enable this court to conduct an initial review of his claims, on June 8, 2005, petitioner was granted leave to amend his petition in order fully factually articulate and brief the claims he wanted this court to review. [rec. doc. 4]. Thereafter, on July 1, 2005, petitioner filed a Supplemental Memorandum in Support in which he fully briefed his other three asserted claims for relief. [rec. doc. 5].

The State has filed an answer and submitted the state court record for this court's review. [docs. 13 and 18]. Petitioner has filed a Reply. [doc. 14]. This report and recommendation follows.

After a full review of the record, the undersigned finds that the grounds asserted for relief are without merit. Accordingly, for the following reasons, it is recommended that the petition be **DENIED AND DISMISSED WITH PREJUDICE.**

### *Standard of Review*

This *habeas* petition was filed on July 8, 2005; therefore the standard of review is set forth in 28 U.S.C. § 2254 (d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000);

*Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[3]  AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments.  *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) citing *Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and  *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[4] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254 (d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254 (d), as amended, this court must give

---

[3]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief ...exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions."  *Montoya ,* 226 F.3d at 403-04  citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. § 2254(d) (West 1994).

[4]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the issues herein.  Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d) (1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d) (2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 citing *Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254 (d), as amended, "[t]he federal courts no longer have a roving commission to discern and "correct" error in state court proceedings, but must exercise a more limited review . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000). Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya,* 226 F.3d at 404; *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) citing *Williams,* 120 S.Ct. at 1523; *Montoya,* 226 F.3d at 403-04 citing *Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as

opposed to the dicta, of...[the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt* , 230 F.3d at 740 citing *Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 citing *Williams,* 120 S.Ct. at 1523. The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 citing *Williams,* 120 S.Ct. at 1521-22. A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...[r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254 (d) (2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id.* citing 28 U.S.C. §2254 (d) (2); *Knox,* 224 F.3d at 476 citing *Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.2000).

### *Timeliness of the Petition*

The state argues that petitioner's conviction became final for purposes of federal *habeas* review on June 22, 2001, the date that the Louisiana Supreme Court denied writs

on direct review.  Title 28 U.S.C. § 2244 (d) (1) (A) was amended by AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons in custody pursuant to the judgment of a State court.  This limitation period generally runs from "... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review ...." 28 U.S.C. § 2244 (d) (1) (A).  A state court judgment is not final for *habeas* purposes until the 90 day period for filing a *writ of certiorari* to the United States Supreme Court has run. *Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) citing  *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir.2003); *Ott v. Johnson,* 192 F.3d 510 (5th Cir. 1999); *See also Clay v. United States*, 123 S.Ct. 1072, 1077 at fn. 3 (2003); Supreme Court Rule 13.   Thus, contrary to the state's position, petitioner's judgment of conviction and sentence became final for AEDPA purposes ninety days after the Louisiana Supreme Court rejected his writ application on direct review, on September 22, 2001.

The statutory tolling provision set forth in 28 U.S.C. § 2244 (d) (2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period.   *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244 (d) (2).   Petitioner's post-conviction application was filed on June 6, 2002, eight and one half months after finality of petitioner's conviction.  Statutory tolling thus began on June 6, 2002 and continued through November 19, 2004, the date the Louisiana Supreme Court denied petitioner's request for writs.  From that date until the filing of the instant petition

on January 28, 2005, another two months and nine days ran.  Thus, on the date the instant

petition was filed, only ten months and one half months of the one-year limitation period

had run.  The instant petition was timely filed.[5]

The State also argues that petitioner's second, third and fourth claims for relief are

untimely because petitioner failed to provide the factual details upon which those claims

are based in his timely filed standardized petition, and those factual details were not

presented until the filing of his supplemental memorandum in support of *habeas* relief on

July 1, 2005, after the one-year limitation period had expired.

As noted above, petitioner set forth four claims for relief in his standardized

petition.  Of these four claims, petitioner briefed only his first claim for relief, that is,  that

he received ineffective assistance of counsel.  Thus, in order to complete an initial review

of petitioner's claims, this court granted petitioner leave to supplement his petition to

provide factual clarification and amplification of those three un-briefed claims initially

made in his original "skeletal" pleading.

In *Mayle v. Felix*,-- U.S. --, 125 S.Ct. 2562, 2566 (6/23/05) the Supreme Court

held that "[a]n amended habeas petition ... does not relate back (and thereby escape

AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts

that differ in both time and type from those the original pleading set forth."   However,

---

[5]The undersigned notes that the petition was signed by petitioner on January 25, 2005.  Thus, under the "mailbox rule," the petition may be deemed to have been filed not on January 28, 2005, but rather three days earlier on January 25, 2005.  *See Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988); *Spotville v. Cain,* 149 F.3d 374, 376 (5th Cir.1998). However, as set forth above, the petition is timely without resort to the "mail box" rule.

petitioner's supplemental memorandum does not assert any "new" grounds for relief; it merely sets forth facts in support of the grounds already timely asserted.

Moreover, although *Mayle* may now discourage the filing of an incomplete or "skeletal" *habeas* petition as was done in this case, at the time of this court's Order[6] granting petitioner leave to amend and supplement his pleadings, a majority of circuit courts, this district court and district courts within this circuit permitted amendments to *habeas* pleadings after the expiration of the one-year limitation period to provide "factual clarification or amplification" of a claim initially made in the original pleading, but not amendments which set forth entirely new claims or new theories of relief.  *See United States v. Thomas,* 221 F.3d 430, 436-437 (3rd Cir. 2000); *United States v. Hicks*, 283 F.3d 380, 388-389 (D.D.C. 2002) citing *Thomas* and *Dean v. United States*, 278 F.3d 1218, 1221-1222 (11th Cir. 2002); *United States v. Espinoza-Saenz*, 235 F.3d 501, 504-505 (10th Cir. 2002); *United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir. 1999); *United States v. Pittman,* 209 F.3d 314, 318 (4th Cir. 2000); *Davenport v. United States*, 217 F.3d 1341, 1344-1346 (11th Cir. 2000); *Islas-Alvarez v. United States,* 2003 WL 1566551, *8 (W.D.Tex. 2003); *Gonzalez-Munoz v. United States*, 2003 WL 1566550, *1-2 (W.D.Tex. 2003); *Hanna v. United States*, 2003 WL 203177, *1-2 (N.D.Tex. 2003); *United States v. Bachu*, 2001 WL 96381 (E.D.La. 2001); *See also Janecka v. Cockrell*, 310 F.3d 316, 322 fn. 7 (5th Cir. 2002) (declining to apply the limitation period to an untimely amended *habeas* petition).

---

[6] The Order was issued on June 8, 2005; *Mayle* was decided on June 23, 2005.

Accordingly, petitioner's supplemental memorandum, providing factual clarification and amplification of the grounds set forth in his original petition, should relate back to the date the original petition was filed. To the extent that *Mayle* may suggest a different result, which the undersigned does not believe to be the case, under the extraordinary circumstances presented herein, equitable tolling of the limitation period would nevertheless be warranted. *See United States v. Patterson*, 211 F.3d 927, 931-932 (5th Cir. 2000); *Alexander v. Cockrell,* 294 F.3d 626, 628-630 (5th Cir. 2002); *Prieto v. Quarterman*, -- F.3d --, 2006 WL 1991613, *3-4 (5th Cir. 2006)*; Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.2000), reh'g granted in part, 223 F.3d 797 (5th Cir.2000); *United States v. Riggs*, 314 F.3d 796, 799 fn. 7 (5th Cir. 2002); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir.1998).

For the above reasons, the undersigned finds petitioner's claims, initially asserted in a timely filed original petition, as supplemented by court-ordered amending petition providing factual clarification and amplification of those claims, are timely filed.

### *Procedural Default*

The State also argues that petitioner's claims that his counsel was ineffective for failing to file a motion to quash his indictment based on discrimination in the selection of grand jury foremen and failing to challenge the allegedly unconstitutional grand jury foremen selection process (claims 1(a) and (b) herein) have not been fully and properly exhausted in the Louisiana state courts and that these claims are therefore "technically"

procedurally defaulted, and that his third claim for relief, that the trial court abused its

discretion in failing to grant a mistrial after the prosecutor commented on prejudicial facts

not in evidence, is both traditionally procedurally defaulted and not cognizable in this

federal *habeas* proceeding because in both the state courts and in this court petitioner has

presented this claim for relief solely under state law. These arguments will be addressed

in the discussion of those claims below.

## LAW AND ANALYSIS

### I. Prosecutorial Misconduct - *Brady* Violation

Plaintiff alleges that the prosecution failed to provide "exculpatory statements and

tapes used as *res gestae* statements" to the defense in a timely manner. In support of this

claim, petitioner cites a passage from a pre-trial discovery hearing wherein the

prosecution stated that a conversation between Wilson and Yolanda Roy had not been

tape recorded. However, at trial the defense was informed that a tape recording of the

conversation **had** been made. Thus, petitioner complains that his counsel was unable to

transcribe the tape or have it examined by an expert for use at trial.

The State contends that the tape recording would not have assisted the defense, but

rather would have corroborated Roy's testimony regarding the incriminating statements

Wilson made to Roy. Moreover, in light of Wilson's full video taped confession which

was presented to the jury, Wilson has not shown prejudice as result of the state's late

production of the tape. Finally, the State asserts that because defense counsel had

knowledge of the incriminating statements made to Roy, and the fact that he admitted in open court that he was "not taken by surprise" by the State's use the statements against Wilson, the late disclosure of the existence of the tape recording memorializing those statements caused no prejudice to the defense.

To the extent that these allegations may be construed as setting forth a claim under *Brady v. Maryland*, 83 S.Ct. 1194, 1196-1197 (1963), that claim is without merit. There is no "general constitutional right to discovery in a criminal case". *Pennsylvania v. Ritchie*, 107 S.Ct. 989, 1002 (1987). However, the Due Process Clause prohibits the prosecution from suppressing evidence that is favorable to the accused and is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Kyles v. Whitley*, 115 S.Ct. 1555, 1565 (1995); *Brady v. Maryland*, 83 S.Ct. 1194, 1196-1197 (1963).

In order to establish a *Brady* violation, the defendant must establish three elements: (1) the prosecution suppressed or withheld evidence; (2) the evidence was favorable; and (3) the evidence was material to either guilt or punishment. *East v. Johnson*, 123 F.3d 235, 237 (5th Cir. 1997); *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997). Moreover, the jurisprudence adds a fourth element: that the evidence was not discoverable through the exercise of reasonable diligence. *Kutzner v. Cockrell,* 303 F.3d 333, 336 (5th Cir. 2002); *Rector,* 120 F.3d at 558. Thus, the state is not obligated to disclose every piece of evidence in its possession; only evidence that is favorable to the

accused and material to guilt or punishment.  *Id.*

In addition to exculpatory evidence, impeachment evidence is subject to disclosure under *Brady*.  *East v. Scott*, 55 F.3d 996, 1002 (5th Cir. 1995) citing *United States v. Bagley*, 105 S.Ct. 3375, 3380 (1985).  However, "[t]he prosecution is not obliged to disclose impeachment evidence unless the evidence is 'favorable to the accused.'" *Id.* at 1005.

Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 1002 quoting *Bagley*, 105 S.Ct. at 3383.  "[A] 'reasonable probability' of a different result is shown when the non-disclosure could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." *Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 519 (1996).  However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Rector,* 120 F.3d at 562.  Moreover, "[w]hen the undisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs." *Spence,* 80 F.3d at 995.  Finally, *Brady* "does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." *East*, 55 F.3d at 1004.

Here, petitioner has failed to demonstrate that the tape recording was in any way favorable to the defense, and more specifically, that the tape constitutes *Brady* evidence

in the first instance.   To the contrary, the trial transcript suggests the opposite.  On January 28, 1998, defense counsel was granted the opportunity to have the tape enhanced by a technician selected by the defense, so long as the enhancement was performed while a representative of the State was present. [tr. pg. 2131-2134].   The enhancement was performed and defense counsel was given an opportunity to listen to the tape.  However, following enhancement, and based on his review of the tape, defense counsel stated that "it's [the tape] not worth pursuing any further as far as any possible evidence from the defense side." [tr. pg. 2179].  Accordingly, at the request of the State, the jury was advised that the tape was inaudible and therefore wouldn't be played to them.  [tr. pg. 2180-2181; 2184].  Moreover, the tape recording of her conversation with Wilson was made *after* Roy had already given a written and oral statement to the police indicating that Wilson told her he had committed the crimes. [tr. pg. 2115-2118; 2203-2205].  Under these circumstances, the statement cannot be viewed as having any exculpatory or impeachment value whatsoever.

Moreover, even if the tape could be considered *Brady* material, which does not appear to be the case, Wilson has failed to demonstrate materiality, that is, that had the tape been disclosed to the defense earlier, "there is a reasonable probability that ... the result of the proceeding would have been different." *East*, 55 F.3d at 1002 quoting *Bagley*, 105 S.Ct. at 3383.  Completely discounting Ms. Roy's testimony, the evidence nevertheless overwhelmingly supports petitioner's convictions.  Reginald Guidry testified

18

that a few days before the killings, he overheard Wilson and his accomplices plotting to rob and kill people and "take 'em for their drugs." [tr. pg. 2033-2034]. Gary Johnson, a long-time friend of petitioner's, testified that shortly before the murders, Wilson told him that he was arranging a drug transaction involving cocaine, and then shortly after the murders admitted to Johnson that he had killed two people, looked in the trunk for the drugs but didn't find anything and then burned the car. Thus, the killings had been "for nothing" because there was no cocaine found in the victim's car. [tr. pg. 2284; 2287]. At trial, Wilson admitted that he was involved in arranging an illegal drug transaction with the victims and his accomplices. [*See* tr. pg. 2307-2313]. Finally, petitioner's video-taped confession, wherein he admits shooting Perry while his accomplice Harry Calais shot Williams, was played in its entirety to the jury. [tr. pg. 2252; 2264-2267]. Given this overwhelming evidence of guilt, the complained of late production of the Roy tape recording is simply not the type of evidence which would have "put the whole case in such a different light as to undermine confidence in the jury verdict." *Spence*, 80 F.3d at 994. For these reasons, petitioner's claim is without merit.

To the extent that Wilson complains that he was denied due process or a fair trial as a result of the use of unspecified inculpatory statements which "the defense had no knowledge of", that claim is refuted by the record, (as found by the state court during post-conviction proceedings), and accordingly, is without merit. [tr. pg. 2937]. Prior to trial, defense counsel filed a Motion for Discovery, to which a formal response was filed. [tr. pg. 29-31; 44-46]. The Motion was also taken up at a hearing on July 2, 1997. [See tr.

pg. 148-158]. Moreover, prior to trial, the State filed an Article 768 Notice of Intent to Use Incriminating Statements made by Wilson to Yolanda Roy, Gary Johnson, Kuwana Westley, Reginald Guidry, Dwayne Calais, Detective Arthur Boyd and Detective Marcus Guidry.[7] [tr. pg. 76]. With respect to the state's Notice, defense counsel stated in open court on January 26, 1998 during a break in *voir dire* that the defense was "not taken by surprise by any of the statements ... that are listed in the 768 notice." Moreover, because the defense would contend that the statements were not made, defense counsel did not object to the use of those statements during the state's opening statement, nor did he contest the voluntariness of the alleged statements. [tr. pg. 1630-1631]. The State also filed an Amended Article 768 Notice of Intent to Use Incriminating Statements made by Wilson to Yolanda Roy, Daleska Ledet, and Shelly Joseph prior to the murders when boarding a bus from Lafayette he said that he would return to Lafayette, and to Della Jean Batiste that he would use a gun she saw in his possession to "take care of" Ms. Roy's ex-boyfriend. [tr. pg. 84; 1633]. The defense had no objection to the use of the first statement. [tr. pg. 1638-1639]. With respect to the second statement regarding the use of the gun, the State agreed that it would not use the statement in its case in chief, but rather,

---

[7]Article 768 provides that "Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to the beginning of the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."

only in the penalty phase.[8] [tr. pg. 1633-1635]. Under these circumstances, petitioner's claim is factually without merit, and accordingly does not warrant federal *habeas* relief.

## II. Denial of Mistrial

Petitioner contends that the trial court abused its discretion in failing to grant a mistrial after the prosecutor made reference to prejudicial facts not in evidence during cross-examination of Wilson.   The State contends that this claim is both traditionally procedurally defaulted and not cognizable in this federal *habeas* proceeding because in both the state courts and in this court petitioner has presented this claim for relief solely under state law.   Thus, the state court's determination that the claim is without merit should not be disturbed since the ruling was based on state rather than federal law, on which this court may not grant relief.   Additionally, the State asserts that the ruling should be upheld under the applicable standard of review because it is not contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court, nor does the ruling constitute an unreasonable determination of the facts in light of the record of  the State court proceeding.   The State's position is well taken.[9]

---

[8]To the extent that the second statement could be construed as implicating other crimes evidence because petitioner had a previous felony conviction, on Notice of Intent to Use Other Unadjudicated Crimes Evidence, a *Prieur* hearing was held the next day, January 27, 1998, at which time the court ruled that evidence that petitioner was seen in possession of a firearm prior to the murders was admissible. [tr. pg. 1639-1640; 91-92; 1937-1938]. That ruling is discussed below in connection with petitioner's other crimes evidence claim.

[9]However, the State's argument that the instant claim is traditionally procedurally defaulted is unpersuasive. Although in post-conviction proceedings the trial court found the claim barred under the contemporaneous objection rule codified in L.C.Cr.P. article 841, the last reasoned state court decision in post-conviction proceedings, the decision of the Louisiana Third Circuit Court of Appeal, did not expressly cite the article as the basis for its decision. Rather, that court found the claim repetitive, having previously been reviewed on direct appeal, presumably pursuant to L.C.Cr.P. article 930.4. However, the United States Fifth Circuit Court of Appeal has held that article 930.4(A) is

The record reveals that Wilson testified that victim James Williams was his "friend" and that Harry Calais, not petitioner, shot Williams. [tr. pg. 2310, 2313-2314; 2355-2356]. During the cross-examination of Wilson, the prosecutor asked Wilson if he had ever met Williams' mother, and then in the form of a question, confronted Wilson with information that he had received from Mrs. Williams that she had never met and did not know Wilson. [tr. pg. 2364]. Defense counsel objected and, in a bench conference, requested a mistrial. The court denied a mistrial, and admonished the jury to disregard the comment as follows:

> Ladies and gentlemen, I've sustained the objection. So you're to disregard [the prosecutor's] statement. And, of course, you understand that [the prosecutor's] asking questions. He's not under oath, and he's not testifying. All right?

[tr. pg. 2364-2365].

On direct appeal and again in post-conviction proceedings, Wilson asserted this claim entirely under Louisiana state law.[10] [*See* rec. doc. 1, Exs. C, p. 6-8 and I]. Accordingly, when addressing this issue on direct appeal, the Louisiana Third Circuit

not a procedural bar in the "traditional sense" implicating the procedural default doctrine. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994). Thus, because petitioner's claim was fully litigated on the merits in direct appeal, without mention of any procedural defects precluding such review, the undersigned concludes that federal *habeas* review of petitioner's claim is not barred.

[10]There is no mention or argument of any federal constitutional issue or any federal law supporting such a claim. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief ... by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' " *Howell v. Missisppi,* 543 U.S. 440, 125 S.Ct. 856, 859 (2005) citing *Baldwin,* 541 U.S. at 32. This is necessary to establish that a federal question was properly presented to a state court. *Id.* Moreover, the burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised. *Bell v. Cone*, 543 U.S. 447, 125 S.Ct. 847, 851 at fn. 3 (2005) citing *Baldwin,* 541 U.S. at 30- 32.

Court of Appeal analyzed the claim under Louisiana standards, holding that under Louisiana law, specifically, L.C.Cr.P. articles 775 (outlining discretionary grounds for grant of a mistrial), 770 (outlining mandatory grounds for grant of a mistrial), and 771 (outlining situations which an admonition is required), the complained of remark did "not rise to the level requiring that a mistrial be granted under any of the mandatory mistrial provisions." [tr. pg. 2911-2913].

As the State correctly notes, petitioner's claim rests entirely on state law. It is not the province of this court to determine if the state courts properly applied state law. *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991)*; Narvaiz v. Johnson*, 134 F.3d 688 (5th Cir. 1998). Federal courts "do not sit as a super state supreme court ...." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). Rather, "[f]ederal *habeas corpus* review is limited to errors of constitutional dimension ...." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998); *Estelle,* 502 U.S. at 68, 112 S.Ct. at 480 ("A federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."); 28 U.S.C. § 2254 (a). Accordingly, petitioner's claim is not cognizable on federal *habeas* review and should be dismissed.

To the extent petitioner's allegations may be construed as asserting a claim for denial of due process, that claim is also without merit. Generally, under Louisiana law, determination of whether a mistrial should be granted is within the sound discretion of the trial court, and that determination will not be disturbed absent an abuse of discretion. *See*

*State v. Fugler,* 737 So.2d 894, 895 (La. App. 1st Cir. 1999) citing *State v. Berry,* 684

So.2d 439, 449 (La. App. 1st Cir. 1996); *State v. Duval*, 747 So.2d 793, 797 (La.App. 1st

Cir. 1999); La.C.Cr.P. art. 775.  A mistrial is a drastic remedy and is only warranted when

the defendant has suffered substantial prejudice. *Fugler,* 737 So.2d at 895; *Berry,* 684

So.2d at 449; *Duval,* 747 So.2d at 797; *State v. Edwards,* 420 So.2d 663, 679 (La.1982);

*State v. Harris*, 812 So.2d 612, 617 (La. 2002).  In order to obtain federal *habeas corpus*

relief on grounds of trial error, the petitioner must show more than prejudice to his

substantial rights.  *Kirkpatrick v. Blackburn,* 777 F.2d 272, 279 (5th Cir.1985).  The

petitioner must establish that the trial error was not merely an abuse of discretion, but also

was so grave as to amount to denial of his constitutional right to due process, that is, that

the error rendered the trial fundamentally unfair.  *Id.*  A trial is fundamentally unfair only

when there is a reasonable probability that the verdict might have been different had the

trial been properly conducted.  *Id.*

Similarly, in federal *habeas* proceedings, a "prosecutor's remarks do not present a

claim of constitutional significance unless they were so prejudicial that [the defendant's]

state court trial was rendered fundamentally unfair within the meaning of the Fourteenth

Amendment."  *Kirkpatrick,* 777 F.2d at 281; *Barrientes v. Johnson*, 221 F.3d 741, 753

(5th Cir. 2000); *Greer v. Miller*, 483 U.S. 756, 765-766, 107 S.Ct. 3102, 3109 (1987).

There is such unfairness only if the prosecutor's remarks evince "either persistent and

pronounced misconduct or ... the evidence was so insubstantial that (in probability) but

for the remarks no conviction would have occurred." *Id*.; *Barrientes*, 221 F.3d at 753.

"When thus attacked, prosecutorial comments are not considered in isolation, but are evaluated in the context of the entire trial as a whole ...." *Id.; Greer*, 483 U.S. at 766. "[I[t is not enough that the prosecutor's remarks were undesirable or even universally condemned ..."; rather, the comments must render the entire trial a denial of due process. *Barrientes*, 221 F.3d at 753 quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986).

In this case, petitioner has not established that the denial of his motion for a mistrial constituted to an abuse of discretion, nor that the denial made his trial fundamentally unfair. The trial court acted within its discretion when it denied petitioner's motion, and considering the trial court's admonition, the denial of the motion did not render petitioner's trial so fundamentally unfair so as to violate petitioner's due process rights. Petitioner has not established sufficient prejudice amounting to a denial of fundamental fairness. Moreover, in light of the overwhelming evidence of petitioner's guilt, discussed in detail above, the undersigned is unable to say that petitioner has demonstrated that there was a reasonable probability that absent the prosecutor's singular remark, followed by an objection and curative instruction, the jury would have reached a different verdict. *See Greer,* 483 U.S. at 766-767 (finding that a prosecutor's single improper question followed by an objection and a curative instruction did not deny the defendant due process given the sufficiency of properly admitted evidence proving the

defendant's guilt). Therefore this claim has no merit.

## III. Other Crimes Evidence

Petitioner argues that evidence of other crimes was improperly admitted at trial. Specifically, petitioner, a convicted felon, argues that the trial court erroneously admitted evidence that petitioner was in possession of a gun two days before the murders occurred under L.C.E. article 404(B). Petitioner additionally argues that the trial court erroneously allowed the State to elicit evidence of prior drug transactions and "collateral drug crimes" during its cross-examination of petitioner. Petitioner contends that this evidence constituted an attack on his bad character, and as such should not have been permitted. Thus, petitioner claims that the use of this evidence deprived him of his right to due process and a fair trial.

The State contends that at the conclusion of a pre-trial *Prieur*[11] hearing, conducted outside of the presence of the jury, the trial court properly determined that evidence of petitioner's possession of a gun two days before the murders was admissible. The State further asserts that evidence of other drug transactions was clearly admissible during petitioner's cross-examination because defense counsel "opened the door" to this line of questioning during his direct examination of petitioner. The State's position is well taken.

---

[11]*State v. Prieur*, 277 So.2d 126 (La. 1973).

The record reveals that on Notice of Intent to Use Other Unadjudicated Crimes Evidence, a *Prieur* hearing was held on January 27, 1998. At the hearing, Della Jean-Batiste testified that two days before the murders she saw Wilson with a gun. [tr. pg. 1947]. At the close of evidence, noting that in his confession petitioner admitted that a gun was used in the commission of the crime, the court ruled that evidence of petitioner's possession of a gun two days before the murder was admissible to show proof of motive, opportunity, preparation, plan, and possibly intent for the commission of armed robbery or murder. [tr. pg. 1947]. At trial, Ms. Batiste testified in conformity with her testimony during the *Prieur* hearing. [tr. pg. 2084-2085]. The court asked defense counsel if he would like a limiting instruction to be given to the jury at that time; however, defense counsel advised that the limiting instruction could be given to the jury at the close of evidence along with the general jury charges. [tr. pg. 2088]. Although petitioner previously confessed that he had two guns, a .32 and a .357, one of which he gave to Harry Calais, and that he shot Perry with the .32, at trial, petitioner recanted his confession adamantly stating that he had no guns and that Ms. Batiste had never seen him with any guns. [tr. pg. 2309; 2331; 2353-2354; 2351-2352].

The record further reveals that on direct examination of petitioner, defense counsel asked petitioner "were you involved in the setting up of bringing six kilos of cocaine into Louisiana?" To which petitioner replied "Yes, sir, I was." Petitioner then testified at length concerning not only the drug transaction involving the victims, but also testified as

to his involvement in drug trafficking, spanning a period of over six years, since the time he first met Yolanda Roy when he was sixteen years old. [tr. pg. 2306-2312]. Petitioner testified that he had lived in Houston, Texas where he dealt drugs with "Puerto Ricans and associates." [tr. pg. 2308]. Therefore, after being contacted by Dwayne Calais, he used these contacts to broker a deal for six kilos of cocaine to be transferred from his Puerto Rican contacts in Houston to Louisiana.[12] [tr. pg. 2308].

On cross-examination, the prosecutor explored petitioner's relationship with the Puerto Ricans with whom petitioner dealt, eliciting testimony about the Puerto Ricans, how often petitioner dealt with them, and the types and quantities involved. [tr. pg. 2327-2329]. It is these passages that petitioner cites in support of his claim.

In post-conviction proceedings, with respect to the gun testimony, the trial court held that "the Court's ruling [at the *Prieur* hearing] was correct and in accordance with LSA C.E. Art. 404(B) and interpretive jurisprudence." With respect to the drug crimes evidence, the court held that "the record reflects that Petitioner's attorney opened the door to questioning about drug dealing during direct examination when he asked, 'were you involved in the setting up of bringing six kilos of cocaine into Louisiana?' To this question, petitioner replied, petitioner replied 'Yes, sir, I was.' He then testified at length concerning his complicity in drug trafficking." Accordingly, both claims were found

---

[12]He further described his trips to and from Houston in setting up the deal, including his return from Houston with the victims on the day of the murder. He claimed that the trio did not have the drugs when they arrived in Breaux Bridge to pick up Harry Calais, but rather, the drugs were supposed to have been transported by eighteen wheeler to Lake Charles. Calais didn't know that there were no drugs in the car, however, until after Calais shot both victims and discovered there were no drugs to be taken. [tr. pg. 2306-2315].

without merit and denied. [tr. pg. 2938]. Likewise, the Third Circuit Court of Appeal found that petitioner "failed to prove he is entitled to relief ...." [tr. pg. 2944].

**Possession of a Gun**

Federal courts will not grant *habeas* relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983), cert. denied, 466 U.S. 984, 104 S.Ct. 2367, 80 L.Ed.2d 838 (1984). The erroneous admission of prejudicial evidence will justify *habeas* relief only if the admission was a crucial, highly significant factor in the defendant's conviction. *Id.*

Here, the trial court committed no error, much less any error creating fundamental unfairness. Like its federal counterpart, Louisiana Code of Evidence article 404(b) generally prohibits the use of other crimes evidence to prove the character of the defendant; however, such evidence is admissible if it is relevant to an issue other than the defendant's bad character. *State v. Jackson*, 625 So.2d 146, 148-149 (La. 1993). One such permissible use is to show "opportunity, intent, preparation [and] plan." L.C.E. art. 404(B). Here, evidence that petitioner possessed a gun two days prior to the murders was directly relevant to petitioner's murder charges, as the murders were committed with the use of guns. Moreover, the fact that petitioner was seen in possession of a gun shortly before the murders was relevant to show Wilson's opportunity, preparation, plan, and

perhaps his intent to commit murder. Additionally, given petitioner's trial testimony, this evidence was relevant to a disputed issue in this case, whether petitioner possessed a gun enabling him to commit the murders in the first instance. Thus, the undersigned finds that the State did not introduce evidence of petitioner's possession of a gun to prove Wilson's criminal propensities or that he is a bad man. Rather, the evidence had independent relevance as an integral part of the crimes for which he was tried and convicted. Since the undersigned has determined that no error occurred in the admission of this evidence, Wilson has no basis for any alleged due process violation. *Robinson v. Whitley,* 2 F.3d 562, 566-67 (5th Cir. 1993) citing *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir.1983).

**Drug Trafficking**

Wilson complains that evidence of his involvement in drug trafficking was improperly admitted during petitioner's cross-examination by the State. The admissibility of evidence is a matter of state law entrusted to the discretion of the trial court. *Beathard v. Johnson,* 177 F.3d 340, 347 (5th Cir.1999). As such, errors regarding the admissibility of evidence do not rise to the level of constitutional violations unless they render the trial fundamentally unfair so as to violate due process. *Neal*, 141 F.3d at 214. "Even the erroneous admission of prejudicial evidence can justify *habeas* relief only if it is 'material in the sense of a crucial, critical highly significant factor.'" *Porter,* 709 F.2d at 957 quoting *Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir.1977).

Here, petitioner testified in his own defense at trial. On direct examination, petitioner admitted his extensive involvement in drug trafficking and its connection to the murders for which petitioner was being tried. "It is well settled that where one side has gone partially into a matter on examination-in-chief, the other side may fully go into it on cross-examination." *State v. Edwards*, 420 So.2d 663, 675 (La. 1982). Moreover, any "doubt as to the propriety or the extent of cross-examination is always resolved in favor of the cross-examination." *Id.* Although evidence of petitioner's extensive drug trafficking may have been damaging to the defense, defense counsel "opened the door" to admission of this evidence by allowing petitioner to testify about his drug related activities on direct examination. The complained of evidence was therefore properly admitted, and accordingly, cannot support a claim that its admission rendered petitioner's trial fundamentally unfair. *Robinson,* 2 F.3d at 566-67.

For the above reasons, petitioner has failed to demonstrate that, in denying relief on petitioner's other crimes evidence claims, the state courts acted contrary to or unreasonably applied, Supreme Court precedent. Accordingly, petitioner is not entitled to federal *habeas* relief on these claims.

## IV. Ineffective Assistance of Counsel

Wilson argues that he received ineffective assistance of counsel because counsel failed to file a motion to quash his indictment based on discrimination in the selection of grand jury foremen, failed to challenge the allegedly unconstitutional grand jury foremen selection process, and failed to obtain an expert to transcribe a tape recorded telephone

conversation between him and Ms. Yolanda Roy.

The State argues that petitioner's claims that his counsel was ineffective for failing to file a motion to quash his indictment based on discrimination in the selection of grand jury foremen and failing to challenge the allegedly unconstitutional grand jury foremen selection process have not been fully and properly exhausted in the Louisiana state courts and that these claims are therefore "technically" procedurally defaulted. The undersigned agrees.

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. 28 U.S.C. § 2254 (b) (1) (A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir. 1983); *Mercadel v. Cain,* 179 F.3d 271, 275 (5th Cir. 1999); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir.1999); *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir.1998). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his claim to the state courts. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004). Moreover, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court, in a procedurally proper manner, even when review by that court is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) citing

*Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985); *Mercadel,* 179 F.3d at 275 citing *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988). In Louisiana, the highest court is the Louisiana Supreme Court.

Review of the record of these proceedings reveals that petitioner did not properly or fairly present these ineffective assistance claims to the Louisiana Supreme Court on either direct or collateral review. On direct review, in the Louisiana Supreme Court, petitioner did not brief these claims. Rather, petitioner attempted to adopt and incorporate the arguments contained in his briefs presented to the lower courts. However, the United States Supreme Court has held that "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief...that does not alert it to the presence of a federal claim in order to find material...that does so." *Baldwin*, 124 S.Ct. at 1351. In collateral proceedings, petitioner argued several ineffective assistance of counsel claims. However, he failed to argue any claim based on ineffective assistance relating to the grand jury, or more specifically, any claim based on counsel's a failure to challenge the discriminatory process for selection of grand jury foremen or failure to file a motion to quash petitioner's indictment. Rather, petitioner raised substantive grand jury claims[13], rather than ineffective assistance of counsel claims as advised by the Louisiana Third Circuit Court of Appeals on direct appeal. Petitioner's claims therefore remain

---

[13]In the Louisiana Supreme Court petitioner argued that grand jury equal protection violations are "structural defects" which are not amenable to harmless error analysis. [*See* rec. doc. 1, ex. I, pg. iv at ¶ X, "Supreme Court Rule X Writ Grant Considerations"].

unexhausted.

When a petitioner fails to timely and properly present his claims to the Louisiana Supreme Court and is time-barred from seeking further relief in the Louisiana courts because he has allowed his state court remedies to lapse, those claims are "technically exhausted" but nevertheless procedurally defaulted. *Wilder,* 274 F.3d at 262 citing *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir.2001); *Magouirk,* 44 F.3d at 357 citing *Coleman,* 501 U.S. at 731-33, and 735 at fn. 1, 111 S.Ct. at 2546; *Bledsue v. Johnson,* 188 F.3d 250, 254-55 (5th Cir. 1999) citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999); *Sones* v. *Hargett,* 61 F.3d 410,416 (5th Cir.1995); *Fuller* v. *Johnson,* 158 F.3d 903, 905-06 (5th Cir. 1998). In such a case there is no difference between non-exhaustion and procedural default. *Id.*

In the instant case, the state court to which petitioner would be required to return to meet the exhaustion requirement would now find the claims untimely.[14]  Hence, for purposes of federal *habeas corpus* review, the claims are "technically" procedurally defaulted. This court may therefore refuse to review petitioner's claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine by showing cause and prejudice for the default or that a miscarriage of justice will result from the denial of federal *habeas* review. *See Finley*, 243 F.3d at 220-221;

---

[14]See La.C.Cr.P. art. 930.8.

*Coleman, supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir. 1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074 (1996); *Sones*, 61 F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106,108 (5th Cir. 1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) quoting *McClesky*, 499 U.S. at 495,114 S.Ct. at 1471.

### *Cause and prejudice*

The Supreme Court has defined what constitutes cause such as to allow review by this court where a claim has been procedurally defaulted. In *Murray v. Carrier*, the Supreme Court explained that cause requires an impediment external to the defense:

> [W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard.

*Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted). If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Petitioner has been placed on notice that the procedural default doctrine may be applicable to the instant claims and was given an opportunity to present valid reasons why his claims are not subject to the procedural default doctrine, and more specifically, an opportunity to demonstrate both "cause" for his default and "prejudice". [rec. doc. 10].

35

Moreover, petitioner was placed on notice that the procedural default doctrine may bar his claims by virtue of the State's Answer to the instant petition and Memorandum in Opposition to *habeas corpus* relief. [rec. doc. 13]. However, petitioner failed to address this issue in his reply to the State's arguments. [rec. doc. 14]. Thus, the court finds that Wilson has failed to demonstrate cause for his default.

The court is not required to examine the prejudice prong if petitioner has failed to demonstrate cause. *Saahir,* 956 F.2d at 118. Accordingly, the undersigned will not undertake an examination of prejudice. Petitioner's procedural default cannot be excused.

### Miscarriage of Justice

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649; 91 L.Ed.2d 397 (1986); *Glover,* 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson,* 150 F.3d 467, 473 (5th Cir. 1998)*; Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson,* 89 F.3d 210, 213 (5th Cir.), *cert. denied,* 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant,* 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a

factual matter that he is actually innocent of the crime of which he was convicted, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claim. Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

For the foregoing reasons, petitioner's claims that his counsel was ineffective for failing to file a motion to quash his indictment based on discrimination in the selection of grand jury foremen and failing to challenge the allegedly unconstitutional grand jury foremen selection process are subject to dismissal with prejudice because the claims are barred by the doctrine of procedural default.

**Merits/ Ineffective Assistance of Counsel**

Moreover, even if petitioner's ineffective assistance claims were not procedurally defaulted, they are nevertheless without merit.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Id.* at 689-90. See also *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985).

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[15] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) citing *Strickland,* 104 S.Ct. at 2068. However, self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element." *Id.*

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's performance was deficient and that the deficiency

---

[15]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998).  However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

### A.  Failing to File a Motion to Quash Based on Discrimination in the Selection of Grand Jury Foremen

Petitioner has shown no prejudice from counsel's alleged failure.  Had counsel been successful in having petitioner's indictment quashed, the State would have sought and obtained a second indictment.  Since the petit jury found that petitioner was guilty beyond a reasonable doubt, there is no basis to believe that any grand jury would not have found probable cause for the charge.  Moreover, given the strength of the State's case, a successful grand jury challenge would have served no purpose other than to delay the trial.  Indeed, that is exactly what the Fifth Circuit recently held in rejecting a petitioner's ineffective assistance claim under factually similar circumstances.  *Pickney v. Cain*, 337 F.3d 542, 545-546 (5th Cir. 2003).  Accordingly, because Wilson cannot meet the prejudice prong of *Strickland*, his claim of ineffective assistance of counsel must fail.

### B.  Failing to Challenge the Unconstitutional Grand Jury Selection Process

Petitioner argues that his counsel was ineffective for failing "to challenge the entire selection process for selecting grand jury foremen in Louisiana, which the court ruled as being unconstitutional in *Campbell v. Louisiana*, 532 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d (1998)."  Initially, the undersigned notes that *Campbell* did not hold former

article 413(B) unconstitutional and any such assertion by petitioner is simply wrong. In *Campbell,* the Court held that a white criminal defendant has standing to object to discrimination against black persons in the selection of grand jurors. Moreover, even if *Campbell* could be construed as suggesting that the statute may have been unconstitutional, it is clear that petitioner was indicted and convicted before *Campbell* was decided. Generally, counsel is not ineffective for failing to anticipate future changes in the law; counsel is not required to be clairvoyant. *See United States v. Cooks*, 461 F.2d 530, 532 (5th Cir. 1972); *Lucas v. Johnson*, 132 F.3d 1069, 1078-1079 (5th Cir. 1998); *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997). Finally, although such a claim may have been foreseeable under prior precedents, defense counsel's lack of prescience in predicting the possible viability of such a claim is not objectively unreasonable, constitutionally deficient or outside "the range of competence". *See Sanders v. Cain,* 2002 WL 32191037, *28 (E.D.La. 2002) adopted by 2003 WL 21920894 (E.D.La. 2003). Moreover, considering petitioner's video-taped confession in this case, it is clear that a duly reconstituted grand jury would have indicted petitioner again. *Sanders*, 2003 WL 21920894 at *5. Thus, Wilson cannot demonstrate prejudice. Petitioner's claim of ineffective assistance of counsel therefore fails.

### C. Failure to Transcribe Roy's Tape Recorded Telephone Conversation

Petitioner complains that his counsel was ineffective for failing to request funds to have the Roy tape enhanced and transcribed by a "voice identification expert." He asserts

that had counsel made a request for funds, "the trial court would have been obligated to honor the defense request" under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 118 (1985).[16] Petitioner contends that had the tape been properly enhanced and transcribed by a qualified expert, the tape would have established that petitioner made no incriminating statements to Roy, and also that the District Attorney and Detective Guidry lied.

Petitioner's counsel did not request that an expert be appointed. Thus, the state court never had an opportunity to determine if petitioner could make the threshold showing entitling him to expert funds.[17] However, even if such a showing could have been made, petitioner is nevertheless is not entitled to relief herein as petitioner has failed to affirmatively demonstrate that any deficiency in his counsel's failure to request an expert caused him actual prejudice. In both this court and the state court, petitioner failed to identify a qualified expert capable of testifying favorably on the contents of the tape as petitioner suggests. This failure is fatal to petitioner's *habeas* claim. *See Earhart v. Johnson*, 132 F.3d 1062, 1067-1068 (5th Cir. 1998) ("Earhart's failure to identify an expert whose testimony would have altered the outcome of his trial is fatal to his *habeas* claim."); *Evans v. Cockrell*, 285 F.3d 370, 377-378 (5th Cir. 2002) (petitioner presented

---

[16] *Ake* involved a defendant whose request for an independent expert was denied by the state. The Court found that when a defendant makes a preliminary showing that expert testimony is crucial to the defense on a point that is likely to be a significant factor at trial, the due process clause of the Fourteenth Amendment requires the state to provide expert assistance on that issue if the defendant cannot afford one.

[17]The state is not required to furnish a criminal defendant with a non-psychiatric expert upon demand. Rather, such experts should be provided only if the evidence is both critical and subject to varying expert opinion. However, the defendant must demonstrate more than a mere possibility of assistance from a requested expert. *Yohey v. Collins*, 985 F.2d 222, 227(5th Cir. 1993).

no evidence of the results of scientific tests yielded and thus his unsupported claims failed

to demonstrate reasonable doubt concerning his guilt or that his counsel deprived him of a

fair trial); *Crane v. Johnson*, 178 F.3d 309, 315 (5th Cir. 1999) ("[E]ven assuming that

trial counsel erred in failing to seek the appointment of a confidential mental health

expert, Crane has not shown how he suffered prejudice from this failure.  Crane produced

no persuasive psychiatric evidence in the district court that if produced at trial, would

have undermined confidence in the resulting verdict.).[18]   Although petitioner speculates

as to the content of the unidentified expert's testimony, he fails to affirmatively

demonstrate that such testimony would not only have been available, but also would have

been sufficiently exculpatory to have undermined confidence in the resulting verdict.

Such speculative, hypothetical, conclusory and self-serving allegations of what an

unidentified expert might have said are insufficient to warrant *habeas* relief.  *See Lovett v.

State*, 627 F.2d 706, 709-710 (5th Cir. 1980) (Lovett asks us to assume that had the

analysis been done it would have proven to be exculpatory, but he offered nothing but his

---

[18]*See also Cockrell v. Dretke,* 88 Fed.Appx. 34, 38 (5th Cir. 2004) (petitioner failed to satisfy his burden because no experts substantiated petitioner claims); *Brigham v. Cockrell,* 2002 WL 1776933 at *4 (N.D.Tex. 2002) citing *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) ("petitioner has failed to identify a qualified expert capable of testifying on this subject ..." and the court cannot even begin to analyze ineffective assistance of counsel claim without affirmative showing of missing evidence or testimony); and *Gibson v. Dretke*, 2003 WL 22287516, *5 (N.D.Tex. 2003) ("Gibson has failed to show a reasonable probability that an independent expert witness would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial).

own protestations of innocence to support this allegation. In sum, we cannot conclude ... that this failure to obtain a handwriting analysis prejudiced Lovett in the least.").[19]

Further, as discussed above, the record reveals that defense counsel was not provided the tape until the time of trial. However, after having had the opportunity to listen to both the original and enhanced tape, defense counsel stated that "it's not worth pursuing any further as far as any possible evidence from the defense side." [tr. pg. 2179]. By this statement, counsel indicated his belief that the contents of the tape were not exculpatory. Indeed, that is exactly what the trial court found on review of Roy's written statement and alleged contents of the tape, that the tape contained no inconsistencies and no exculpatory evidence; and for that reason, the court denied petitioner's claim in post-conviction proceedings, as petitioner could not establish prejudice as a result of counsel's alleged failure. [tr. pg. 2105-2106; 2937]. Under these circumstances, the undersigned cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, or that the decision was an unreasonable determination of the facts in light

---

[19]*See also Brigham,* 2002 WL 1776933 at *4 (other than speculating ... petitioner offers no evidence that any coercive, suggestive, or otherwise inappropriate techniques were used in this case. Without such evidence, the Court cannot conclude that the testimony of an expert would have affected the outcome of the trial."); *Gibson*, 2003 WL 22287516 at *5 citing *Yohey v. Collins,* 985 F.2d 222, 227 (5th Cir.1993), *Buckelew v. United* States, 575 F.2d 515, 521 (5th Cir.1978), *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir.1981), *Martin v. McCotter,* 796 F.2d 813, 819 (5th Cir.1986), and *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir.1985); and *Price v. Dretke,* 2003 WL 22519439, *6 (N.D.Tex. 2003) ("Petitioner has failed to show that any fingerprint expert would have testified that the print in fact did not belong to Petitioner. Petitioner's conclusory allegations are not sufficient."); *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in *habeas* proceedings); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir.1985) ("for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."); *Martin v. McCotter,* 796 F.2d 813, 819 (5th Cir.1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ ...."); *Green,* 160 F.3d at 1043; and *Sayre*, 238 F.3d at 635.

of the evidence presented in the state court proceeding.

Finally, given defense counsel's assessment of the contents of the tape, the undersigned cannot find that counsel's decision not to request funds for additional enhancement and transcription was objectively unreasonable. To the contrary, the testimony of an expert would most probably merely have confirmed Roy's testimony, thus strengthening the State's case, compounding unfavorable evidence against Wilson. *See Thompson v. Cain*, 161 F.3d 802, 813-814 (5th Cir. 1998). Rather, defense counsel thoroughly and effectively cross examined Ms. Roy undermining her testimony regarding Wilson's alleged statements to her, casting doubt on the veracity and credibility of her testimony, given her familial relationship with Wilson's accomplices and stated motives for providing testimony favorable to the State in the first instance. Thus, eliciting beneficial testimony from the state's witness, rather than from an expert paid for and retained by the defense, a tactic which in the undersigned's experience is often more effective.

For the reasons discussed above, petitioner's claim this his counsel was ineffective for failing to request funds to have the Roy tape enhanced and transcribed by a "voice identification expert" is without merit.

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, November 27, 2006.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE